## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RAJANI T. DEOTARE, and
CHANDANI V. PATEL,

        **Plaintiffs,**

   v.

WELLS FARGO BANK, N.A.,

        **Defendant.**

1:17-cv-699-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s

("Wells Fargo") Motion to Dismiss Plaintiffs' First Amended Complaint [15];

Plaintiffs Rajani T. Deotare, and Chandani V. Patel's ("Plaintiffs") Motion to File

Excess Pages [19]; and Plaintiffs' Motion to Strike Wells Fargo's Reply Brief [22].

## I.    BACKGROUND

### A.    Facts

Plaintiffs allege that on or about November 8, 2014, Niveda Dave

("Ms. Dave") borrowed $350,000 from Plaintiffs to purchase property at a tax

foreclosure sale.  (Amended Complaint [13] ("Compl.") ¶ 9).  In return for the

$350,000, Ms. Dave executed a promissory note promising repayment of the

$350,000, with interest.  (Id.).

On or about January 21, 2015, Plaintiffs received two checks drawn on Ms. Dave's Wells Fargo checking account, made payable to Plaintiff Deotare. (Id. ¶ 10). One was in the amount of $300,000 and the other in the amount of $65,000 (the "Checks"). (Id.). Later that day, Plaintiff Deotare deposited the Checks into her account at Wells Fargo. (Id. ¶ 11). Plaintiffs allege that a Wells Fargo bank teller told them that the Checks had cleared and the funds were available for immediate withdrawal. (Id. ¶ 12). Based on this statement, Plaintiffs marked the promissory note "Satisfied" and returned it to Ms. Dave. (Id. ¶ 14).

On January 22, 2015, the day after the deposit was made, Plaintiff Deotare attempted to make an online transfer of $365,000 to Plaintiff Patel's account. (Id. ¶ 13). On January 23, 2015, without notice or explanation, Wells Fargo reversed the deposit of the Checks by Plaintiff Deotare and re-credited the funds to Ms. Dave's account. (Id. ¶ 15). On January 26, 2015, Wells Fargo froze the accounts Plaintiff Deotare used in the transfer from Ms. Dave and to Plaintiff Patel. (Id. ¶ 16). After Wells Fargo re-credited the funds to Ms. Dave's account, a relative allegedly convinced Ms. Dave to transfer the re-credited funds to an unidentified third party. Plaintiffs allege they have no recourse against Ms. Dave because "she does not have any other assets to speak of." (Id. ¶ 23). Plaintiffs

allege that in March 2015, Wells Fargo permanently closed Plaintiffs' and Ms. Dave's accounts. (Id. ¶ 22).

The Amended Complaint alleges that upon Plaintiff Deotare's inquiry, a branch manager at a Wells Fargo location refused to explain why the Checks were re-deposited into Ms. Dave's account. Approximately one week after the Checks were re-credited, Plaintiffs hand-delivered a letter to Wells Fargo demanding an explanation of the re-deposit and demanding a refund of the amount of the Checks. ([13.1]). Wells Fargo did not respond to the letter.

B.    Procedural History

On January 23, 2017, Plaintiffs filed their "Tort & Damage Complaint" in the Superior Court of Gwinnett County [1.1].

On February 24, 2017, Wells Fargo removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the grounds that Plaintiffs and Wells Fargo have complete diversity of citizenship, and the amount in controversy exceeds $75,000.00 [1].

On May 10, 2017, Plaintiffs filed their Amended Complaint [13], asserting eighteen causes of action and five categories of damages against Wells Fargo. The Amended Complaint asserts causes of action for breach of contract (Count I), detrimental reliance and promissory estoppel (Count II), breach of the implied

covenant of good faith (Count III), negligence (Count IV), conversion (Count V), theft by conversion (Count VI), theft by deception (Count VII), constructive trust (Count VIII), money had and received (Count IX), tortious interference with contractual relations (Count X), breach of fiduciary duty (Count XI), misrepresentation and fraud (Count XII), violation of the Georgia Fair Business and Uniform Deceptive Trade Practices Act (Count XIII), violation of Georgia's Uniform Commercial Code (Count XIV), violation of the Expedited Funds Availability Act, 12 U.S.C. § 4001 *et seq*., (Count XV), violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*., (Count XVI), violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, (Count XVII), and "miscellaneous" (Count XVIII).

On May 24, 2017, Wells Fargo moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted [15]. In response, Plaintiffs withdrew their claims for breach of fiduciary duty (Count XI), violation of the Expedited Funds Availability Act (Count XV), violation of the Electronic Fund Transfer Act and Regulation E (Count XVI), and violation of Section 5 of the Federal Trade Commission Act (Count XVII).

On June 26, 2017, Plaintiffs filed their Motion for Leave to file excess pages in its response to Wells Fargo's Motion to Dismiss [19]. That same day, Plaintiffs

filed their Response to Wells Fargo's Motion to Dismiss [20].

On August 7, 2017, Plaintiffs filed their Motion to Strike portions of Wells Fargo's reply brief in support of its Motion to Dismiss [21].

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiffs the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). "'[U]nwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). The Court also is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

## III. ANALYSIS

### A. Pleading Standards

Wells Fargo argues the Amended Complaint fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

So-called "shotgun pleadings" are disfavored in this circuit. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008); accord Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001) (explaining that shotgun pleadings

"wreak havoc on the judicial system").  One type of shotgun pleading is one "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015).  A complaint is also a shotgun pleading if it is "disjointed, repetitive, disorganized and barely comprehensible."  Lampkin-Asam v. Volusia County Sch. Bd., 261 Fed. App'x. 274, 276 (11th Cir. Jan. 9, 2008); see also Benjamin v. Bank of Am., N.A., No. 1:11-CV-02037-JOF, 2012 WL 13008410, at *3 (N.D. Ga. Aug. 13, 2012) ("The portion of Plaintiff's complaint where she sets forth the 'counts' is nearly incomprehensible in that it block cuts and pastes long passages from various Georgia statutes without alleging any facts relevant to the instant controversy.").  The Eleventh Circuit has stated that, when faced with a shotgun pleading, a district court should require the parties to file an amended pleading rather than allow such a case to proceed to trial.  Byrne, 261 F. 3d at 1129.

The Amended Complaint asserts eighteen causes of action and relies on numerous legal conclusions.  The facts alleged are slight.  Five of the eighteen counts contain only one paragraph in support of the claim alleged.  This "kitchen sink" litigation strategy is not well viewed in our circuit, including because it creates undue burden on the Court and unreasonably increases the expense of

litigation. That Plaintiffs dismissed four of their eighteen claims after Wells Fargo's motion to dismiss was filed suggests that the Amended Complaint was improperly pled originally. The Court will consider the fourteen claims remaining in the Amended Complaint. If, however, it finds that any claim violated Plaintiffs' obligations under Rule 11 of the Federal Rules of Civil Procedure, the Court may seek appropriate sanctions.[1]

B.    Criminal Statutes

Plaintiffs assert a claim for "theft by deception" in Count VII of the Amended Complaint. Georgia law does not recognize a civil cause of action for theft by deception. See Kabir v. Statebridge Co., LLC, No. 1:11-CV-2747-WSD, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) (holding that "Plaintiff cannot allege a civil claim for theft by deception" because "O.C.G.A. § 16–8–3 does not provide for a civil remedy and a civil remedy cannot be implied to arise from a violation of that criminal statute"); Am. Gen. Life & Accident Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007) (same). Count IV is dismissed.

---

[1]    Plaintiffs Motion to File Excess Pages was filed in June 26, 2017, the same day as their response brief. ([19]). Despite voluntarily dismissing four of their claims, Plaintiffs sought to file a 39-page response to Wells Fargo's 37-page opening brief. While the Court would normally deny such an untimely and extraordinary request, it reluctantly grants Plaintiffs' motion and will consider the entirety of Plaintiffs' response.

Count VI asserts a claim for theft by conversion "by violating O.C.G.A. §16-8-4 (b)." This is also a criminal statute that does not provide a private right of action. O.C.G.A. § 16-8-4. Count VI is also dismissed.

C.     The Account Agreement

Plaintiffs allege in Count I that Wells Fargo breached its Consumer Account Agreement (the "Account Agreement"). ([15.2]). Despite asserting a breach of contract claim and quoting the relevant standards from the Account Agreement, Plaintiffs did not attach the agreement to the Amended Complaint. Ordinarily, the Court does not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). The Court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 69 (11th Cir. 1997). The Court may consider these attachments in testing the Amended Complaint's sufficiency without converting a Rule 12(b) motion into a motion for summary judgment. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-78 (11th Cir. 1999). Accordingly, in evaluating whether

the Amended Complaint states a claim for breach of contract, the Court will

consider the Account Agreement attached to Wells Fargo's Motion to Dismiss.

### 1. Choice of Law

A district court sitting in diversity applies the choice-of-law rules of the state

in which it sits, in this case Georgia. Rando v. Gov't Employees Ins. Co., 556 F.3d

1173, 1176 (11th Cir. 2009). "Georgia will honor choice of law provisions unless

no reasonable basis exists for doing so or, application of the chosen state's law is

contrary to a fundamental policy of Georgia." Bryan v. Hall Chem. Co., 993 F.2d

831, 834 (11th Cir. 1993); see also Convergys Corp v. Keener, 582 S.E.2d 84, 87

(Ga. 2003) ("Georgia courts will not apply chosen law which would contravene the

policy of, or would be prejudicial to the interests of this state."); Carr v. Kupfer,

296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy, this court will

normally enforce a contractual choice of law clause.").

The Account Agreement contains a choice-of-law provision, which states:

> Your account is governed by the laws and regulations of the United
> States and, to the extent applicable, the laws of the state in which the
> office of the Bank that maintains your account is located (unless the
> Bank has notified you in writing that the laws of another state shall
> govern your account), without regard to conflicts of laws principles,
> or clearing house rules and the like. If you were not physically
> present at an office of the Bank when you opened your account (for
> example, if you opened your account by phone, through the mail, or
> over the Internet), your account will be governed by the laws of the
> state in which the main office of the Bank is located, unless the Bank

> notifies you that your account has been assigned to a particular office of the Bank.

([15.2] at 37).

Without expressly addressing which state's law governs the Account Agreement, the parties analyzed the sufficiency of Plaintiffs' breach of contract claim under Georgia law. The Amended Complaint indicates that Plaintiffs' accounts were maintained in Georgia. Plaintiffs resided in Georgia during the underlying events giving rise to their claims. A substantial part of the events giving rise to Plaintiffs' claims occurred in Georgia. (See Compl. ¶ 7, Ex. A). Plaintiffs hand delivered a letter to the Wells Fargo branch located on Peachtree Industrial Boulevard, in Chamblee, Georgia. (Compl. ¶ 17). While the record does not clearly establish that Georgia law applies given the terms of the choice-of-law provision, for purposes of this motion, the Court accepts the parties' representations and analyzes the Account Agreement under Georgia law.

### 2.    Breach of the Account Agreement

Plaintiffs allege in Count I that Wells Fargo breached the standard of care provided in the Account Agreement by returning the Checks without explanation, causing them to incur damages. (Compl. ¶ 26). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Houghton v.

Sacor Financial, Inc., 786 S.E.2d 903 (Ga. Ct. App. 2016) (internal citations

omitted).

Whether Wells Fargo breached the Account Agreement turns on the duties

imposed by the agreement. The Account Agreement addresses the standard of care

required of Wells Fargo:

> The Bank will meet its standard of care for your account, provided the
> Bank exercises ordinary care in the transaction at issue. . . .
> "[O]rdinary care" does not require that the Bank examine the item. In
> all other cases, "ordinary care" requires only that the Bank follow
> standards that do not vary unreasonably from the general standards
> followed by similarly situated banks. The Bank's policies and
> procedures are general internal guidelines and do not establish a
> higher standard of care for the Bank than is otherwise established by
> the laws governing your account. If the Bank waives any of its rights
> as to you or your account on one or more occasions, it will not be
> considered a waiver of the Bank's rights on any other occasion.

([15.2] at 10).

The Account Agreement contains several other relevant provisions which

Wells Fargo argues permit the actions alleged in the Amended Complaint. The

Account Agreement provides:

> "Freezing" your account
>
> As part of the Bank's loss prevention program, when the Bank
> suspects that irregular, unauthorized, or unlawful activities may be
> involved with your account, the Bank may "freeze" (or place a hold
> on) the balance in your account (and in other accounts you maintain
> with the Bank) pending an investigation of such suspected activities.
> If the Bank freezes your account, the Bank will give any notice

required by the laws governing your account.

. . . .

Deposited items returned

The Bank has the right to charge back to or otherwise debit any account(s) you maintain with the Bank for any deposited item that is returned (assess any associated fees and to reverse or recover any associated interest that may have accrued), even if you have made withdrawals against it.

. . . .

Closing your account

You or the Bank may close your account at any time.

. . . .

Verification of transactions; right to reverse erroneous credits

All transactions, including without limitation, those for which the Bank has provided a receipt, are subject to the Bank's final verification. Verification of a deposit does not occur at the teller window. Consequently, the receipt that you receive at the time of your deposit is not evidence that your deposit has been verified. The Bank may reverse or otherwise adjust any credit it believes it has erroneously made to your account at any time without prior notice to you.

(Id. at 11, 16, 31, 34). Plaintiffs allege that Plaintiff Deotare went to a Wells Fargo branch to deposit the Checks from Ms. Dave into her Wells Fargo account. When Plaintiff Deotare deposited the checks, a Wells Fargo bank teller told her that the Checks had cleared and were available for immediate withdrawal. Two days after the deposit, Wells Fargo reversed the deposit and re-credited the funds to Ms. Dave's account without providing Plaintiffs with an explanation. Plaintiffs alleged they incurred damages because they were unable to later recover the value

of the Checks after the funds were returned to Ms. Dave. Despite Plaintiffs'

numerous requests for an explanation of the bank's actions, Wells Fargo did not,

prior to litigation, offer an explanation as to how the Checks were processed.[2]

Despite the Account Agreement's provisions regarding the return of deposited

items, these allegations state a claim for breach of the standard of ordinary care

provided in the Account Agreement. It is plausible, on the face of the Amended

Complaint, that Wells Fargo failed to exercise ordinary care in removing the

deposited funds from Plaintiff Deotare's account without notice, especially when

Wells Fargo had the ability to freeze the funds and conduct an inquiry. Taking the

allegations of the Amended Complaint in the light most favorable to Plaintiffs,

Count I states a claim for breach of the Account Agreement.

     D.     <u>Breach of the Implied Covenant of Good Faith</u>

     Count III alleges a breach of the implied covenant of good faith. In Georgia,

---

[2]     In its Reply Brief, Wells Fargo asserts that "the checks were returned because the signatures on the instruments did not match the account signature card for Ms. Dave's account." ([21] at 4). This assertion, contained nowhere else in the record before the Court, prompted Plaintiffs to file their "Motion to Strike" Wells Fargo's reply brief. ([22]). Plaintiffs argue that this assertion was the first time that Wells Fargo provided a reason as to why the Checks were returned. The Court grants Plaintiffs' Motion to Strike insofar as the Court will not consider factual assertions not made in the Amended Complaint or otherwise properly before the Court on Wells Fargo's Motion to Dismiss.

"[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement." Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc., 662 S.E.2d 745, 748 (Ga. Ct. App. 2008). This implied covenant cannot be breached independently of "the contract provisions it modifies." Id. As the Eleventh Circuit has explained:

> [The implied covenant of good faith and fair dealing] is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*. But it is not an undertaking that can be breached apart from those terms.

Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (citations omitted). Thus, to state a claim for breach of the implied duty of good faith and fair dealing, "a plaintiff must set forth facts showing a breach of an actual term of an agreement." Am. Casual Dining, LP v. Moe's Sw. Grill, LLC, 426 F.Supp.2d 1356, 1370 (N.D. Ga. 2006) (citations omitted).

Plaintiffs' cause of action for breach of the implied covenant is separate and distinct from their breach of contract claim and may be pled simultaneously. See, e.g., TechBios, Inc. v. Champagne, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009) (denying motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing after finding that plaintiff had stated a claim for breach of contract). As found above, Plaintiffs have adequately set forth a claim for

breach of contract, and therefore state a claim for breach of the implied covenant of good faith. Wells Fargo's motion to dismiss is denied as to Count III.

E.     Detrimental Reliance and Promissory Estoppel[3]

Count II alleges that Plaintiffs are entitled to recover from Wells Fargo on theories of promissory estoppel and detrimental reliance. Under Georgia law, the elements of promissory estoppel are: "the defendant made a promise upon which he reasonably should have expected the plaintiff to rely, the plaintiff relied on the promise to his detriment, and injustice can be avoided only by enforcing the promise because the plaintiff forwent a valuable right." Mbigi v. Wells Fargo Home Mortg., 785 S.E.2d 8, 20 (Ga. Ct. App. 2016) (citation and quotations omitted); see also O.C.G.A. § 13–3–44.

Count II of the Amended Complaint states, in its entirety, "Alternatively, and or additionally, Plaintiffs are entitled to recover from Defendant based on principles such as promissory estoppel and detrimental reliance." (Compl. ¶ 32).

---

[3]     Regarding Plaintiffs' tort claims, Georgia applies the substantive law of the place where the tort or wrong occurred, which is "the last place where the last event occurred necessary to make an actor liable." Int'l Bus. Machs. Corp. v. Kemp, 536 S.E.2d 303, 306 (2000); see also Fed. Ins. Co. v. Nat'l Distrib. Co., Inc., 417 S.E.2d 671, 673 (Ga. Ct. App. 1992). Here, Plaintiffs resided in Georgia at the time of the alleged wrongdoing and the harms were suffered in Georgia. Therefore, Georgia law governs Plaintiffs' non-contractual claims.

This unsupported conclusion does not state facts from which the Court may find that Plaintiffs state a claim for promissory estoppel. Count II is therefore dismissed.

      F.    <u>Negligence</u>

Count IV of the Amended Complaint alleges negligence. The elements of a cause of action for negligence in Georgia are: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." <u>Politzer v. Xiaoyan</u>, 801 S.E.2d 114, 115 (Ga. Ct. App. 2017) (citations omitted).

Plaintiffs allege "Defendant's misfeasance arose in the context of the (non) performance of its contractual duties. And one or more of those duties arose independent of any contract between Plaintiffs and Defendant." (Compl. ¶ 42). Under Georgia law, a defendant's failure to perform a contractual duty cannot serve as the basis for a negligence claim. <u>Traina Enters., Inc. v. RaceTrac Petroleum, Inc.</u>, 525 S.E.2d 712, 714 (Ga. Ct. App. 1999). Plaintiffs cannot assert a breach of the common law duty of ordinary care based on their allegations that

Wells Fargo breached the standard of care provided in the Account Agreement. See Ceasar v. Wells Fargo Bank, N.A., 744 S.E.2d 369, 373 (Ga. Ct. App. 2013); WESI, LLC v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1361 (N.D. Ga. 2007) ("A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage.") (citing Faircloth v. A.L. Williams & Assocs., Inc., 426 S.E.2d 601 (Ga. Ct. App. 1992)).

The Amended Complaint does not establish that Wells Fargo owed Plaintiffs a legal duty outside of their contractual relationship. Plaintiffs quote the general standard for common law negligence but do not identify any non-contractual legal duty that Wells Fargo violated by re-crediting the Checks and closing their accounts. See Commercial Bank & Trust Co. v. Buford, 243 S.E.2d 637, 638-39 (Ga. Ct. App. 1978) (rejecting claim that bank breached a legal duty by initiating foreclosure proceedings; noting that "the only relationship between [the borrower] and the bank was that which arose out of the note and security deed."); Holmes v. Wells Fargo Bank, N.A., No. 114-cv-00626-JEC-GGB, 2014 WL 12199986, at *3 (N.D. Ga. Aug. 12, 2014) (rejecting claim against bank for negligent loan servicing, stating that plaintiff "ha[d] not established that any of the Defendants owed him a legal duty outside of the contractual relationship"). Count IV fails to

state a claim for negligence and is therefore dismissed.

G.    Conversion

Count V asserts a claim for the tort of conversion.  To establish a claim for conversion under Georgia law, a party must demonstrate "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Capital Fin. Servs. Group, Inc. v. Hummel, 721 S.E.2d 108, (Ga. Ct. App. 2011) (citing J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440 (Ga. Ct. App. 2007)).  The Amended Complaint does not allege that Wells Fargo remained in possession of Plaintiffs' funds at any time.  Plaintiffs merely allege that Wells Fargo reversed the Checks and credited the funds back to Ms. Dave's account. Plaintiffs' conversion claim must fail for this reason.  "Where there is no evidence that the defendant possesses any of the funds or items allegedly converted, an action for conversion must fail." J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell, 644 S.E.2d 440, 447 (Ga. Ct. App. 2007).  Count V fails to state a claim for conversion and is therefore dismissed.

H.    Constructive Trust

Count VIII of the Amended Complaint asserts that Plaintiffs are entitled to a

constructive trust. "[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment. Such a trust is impressed upon property when it is against equity that the person holding title to the property be allowed to enjoy the beneficial interest in the property." GMRI, Inc. v. Indep. Bank of Georgia, 212 F. Supp. 3d 1306, 1313–14 (N.D. Ga. 2016) (quoting Vinings Bank v. Brasfield & Gorrie, LLC, 759 S.E.2d 886 (Ga. Ct. App. 2014)). "Constructive trust is a remedy, not a cause of action." Id. "[W]hen the property in question is money as in this case, it must comprise an identifiable fund to support an action for conversion." Id. at 1314 (citing Levenson v. Word, 668 S.E.2d 763 (Ga. Ct. App. 2008)). Here, Plaintiffs' request for a constructive trust fails because Wells Fargo no longer has possession of the funds at issue. Plaintiffs allege that Ms. Dave transferred those funds to an unknown individual. (Compl. ¶ 23). Count VIII alleging entitlement to a constructive trust fails to state a cause of action and is therefore dismissed.[4]

---

[4]     Plaintiffs' claim for "money had and received" must also be dismissed because Wells Fargo did not maintain possession of the funds at issue. In Georgia, a claim for money had and received "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1127 (11th Cir. 2010) (quoting Fernandez v. WebSingularity, Inc., 681 S.E.2d 717, 721 (Ga.

I.      Tortious Interference with Business Relations

Count X alleges a claim for "tortuous interference with business relations."

To prevail on a claim for tortious interference with contractual relations, a claimant

must show the defendant (1) acted improperly and without privilege, (2) acted

purposefully and with malice with the intent to injure, (3) caused a party or third

parties to discontinue or fail to enter into an anticipated business relationship with

the plaintiff, and (4) by tortious conduct proximately caused damage to the

plaintiff. Sowell v. Blackman, 512 S.E.2d 713, 716 (Ga. Ct. App. 1999).

Here, there is no allegation that Wells Fargo had any involvement with the

business relationship between Plaintiffs and Ms. Dave. A relative of Ms. Dave, not

Wells Fargo, convinced her to transfer the funds to an unknown third-party.

(Compl. ¶ 23). There is no factual assertion suggesting that Wells Fargo acted

with malice or intended to injure Plaintiffs. All that is alleged is that Wells Fargo

froze access to the deposited funds, froze Plaintiffs' accounts, and returned the

deposited funds to Ms. Dave. Plaintiffs do not allege that Wells Fargo knew that

the funds were the result of a contractual or business relationship, much less allege

---

Ct. App. 2009). Because Plaintiffs cannot establish the first element, Count IX is
dismissed.

facts even tending to establish that Wells Fargo acted "purposefully and with malice with intent to injure" that contractual or business relationship.  See Ziemba v. Am. Home Mortg. Servicing, Inc., No. 1:10-CV-02781-RWS, 2011 WL 3420646, *5 (N.D. Ga. Aug. 4. 2011).  Count X is dismissed.

J.      Misrepresentation and Fraud

Count XII alleges a claim for fraud.  Under Georgia law, "the tort of fraud consists of five elements: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff."  Smith-Tyler v. Bank of Am., N.A., 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (quoting Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003) (internal quotation marks omitted)).  Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading requirement to state a claim for fraud.  Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "The rule requires this particularity in order to alert defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior."  Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006) (citing Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th

Cir. 1986)).

The Amended Complaint contains no allegations regarding either scienter or intent, much less particularized facts establishing those elements. Count XII is dismissed.

K.    Violation of the Georgia Fair Business Practices Act and
      Georgia's Uniform Deceptive Trade Practices Act

Plaintiffs allege in Count XIII that Wells Fargo violated the Georgia Fair Business Practices Act ("FBPA") and the Georgia Deceptive Trade Practices Act ("UDTPA"). Georgia's FBPA prohibits any "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393(a). The FBPA further provides that the FBPA shall not "apply to . . . [a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." O.C.G.A. § 10-1-396(1). The Court of Appeals of Georgia has observed that "[t]he General Assembly intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." Chancellor v. Gateway Lincoln-Mercury, Inc., 502 S.E.2d 799, 805 (Ga. Ct. App. 1998).

The FBPA does not apply in extensively regulated areas of the marketplace such as consumer banking. See Taylor v. Bear Stearns & Co., 572 F.Supp. 667, 675 (N.D. Ga. 1983) (holding allegations of unauthorized trades or churning not cognizable under FBPA); Chancellor v. Gateway Lincoln–Mercury, Inc., 502 S.E.2d 799 (Ga. Ct. App. 1998) ("area of finance charges, disclosure, and truth in lending falls outside the FBPA, except where expressly covered"); Ferguson v. United Ins. Co. of Am., 293 S.E.2d 736 (Ga. Ct. App. 1982) ("[I]nsurance transactions are among those types of transactions which are exempt from the Fair Business Practices Act.").

Rather than the FBPA, the Georgia Uniform Commercial Code, O.C.G.A. §§ 11-1-101 et seq., ("UCC") expressly regulates Wells Fargo's actions and obligations with regard to the transactions at issue in the Amended Complaint. The Georgia UCC provides:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item.

O.C.G.A. § 11-4-214. Thus, the conduct involving the return of the Checks is regulated by the Georgia UCC and is not the FBPA, which applies "only to the

unregulated consumer marketplace." Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000).

Plaintiffs also allege in Count XIII that Wells Fargo committed unfair and deceptive trade practices in violation of the UDTPA. The Eleventh Circuit Court of Appeals has interpreted Georgia's UDTPA as having commercial, rather than consumer, application. Kason Industries, Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1204 (11th Cir. 1997) ("[I]t is clear to us that the FBPA is significantly different from the UDTPA and the Lanham Act, because of the former statute's focus on the consumer (as opposed to the commercial) marketplace."); see also Robinson v. Bank of Am. Home Mortg., No. 1:14-CV-3428-HLM, 2014 WL 12465447, at *6 (N.D. Ga. Nov. 19, 2014) ("Plaintiff is a consumer and therefore does not have a viable claim under the UDTPA."). Plaintiffs here are consumers and therefore have no viable UDTPA claim. Count XIII is dismissed.

L.    Violations of Georgia's Uniform Commercial Code

Plaintiffs allege in Count XVII that Wells Fargo failed to give proper notice of the returned Checks in violation of Section 11-4-214 of Georgia's UCC. That section gives a bank the right under certain conditions to revoke a "settlement" given to a customer with respect to an "item," to charge back to a customer's

account the amount of any credit given for an item, and the right to obtain a refund from its customer "if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts." O.C.G.A. § 11-4-214 (a); see also O.C.G.A. § 11-4-302 (requiring notice of dishonor). The Amended Complaint states that Wells Fargo never gave Plaintiffs any notice of the facts underlying the reversal of the Checks, even after several phone calls, visits, and a letter sent to Wells Fargo.

The requirements of the Georgia UCC are default provisions that may be altered by contract. The Georgia UCC provides:

> The effect of provisions of Titles 1 through 10 of this article may be varied by agreement, except as otherwise provided in Titles 1 through 10 of this article and except that the obligations of good faith, diligence, reasonableness and care prescribed by Titles 1 through 10 of this article may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

O.C.G.A. § 1–102(3). The Account Agreement provides that Wells Fargo "has the right to charge back to or otherwise debit any account(s) you maintain with the Bank for any deposited item that is returned . . . even if [Plaintiffs] have made withdrawals against it." ([15.2] at 16). The Account Agreement eliminates Plaintiffs' right to notice:

> This right of charge back or debit is not affected by the expiration of

any applicable midnight deadline, provided the Bank does not have
actual knowledge that such deadline has expired or, having such
knowledge, the Bank concludes that . . . [t]he deposited item is
returned in accordance with the laws governing your account . . .
The Bank need not give you any prior notification of its actions with
respect to the claim.

Id.  The Account Agreement is a permitted modification of the Georgia UCC's

default rules regulating Wells Fargo's conduct with respect to the transactions at

issue.  The Georgia UCC thus does not provide grounds for a separate cause of

action.  The Amended Complaint fails to state a claim under the Georgia UCC and

Count XVII is dismissed.[5]

## IV.    ORDER TO SHOW CAUSE

An attorney who presents to the Court any paper, motion, or pleading

certifies that "to the best of the person's knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances" that there is

"evidentiary support" for any allegations or factual contentions.  Fed. R. Civ. P.

11(b)(3).  Rule 11 sanctions are proper:

(1) when a party files a pleading that has no reasonable factual basis;
(2) when the party files a pleading that is based on a legal theory that

_____

[5]    Count XVIII of the Amended Complaint entitled "Miscellaneous" does not
set forth a plausible cause of action or connect facts to any allegations and
therefore does not set forth a claim upon which relief can be granted.  Count XVIII
is dismissed.

has no reasonable chance of success and that cannot be advanced as a
reasonable argument to change existing law; and (3) when the party
files a pleading in bad faith for an improper purpose.

Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996)

(quoting Jones v. International Riding Helmets, Ltd., 49 F.3d 692, 694 (11th Cir.

1995)).  Rule 11 provides that the district court, on its own initiative, may require a

party to "show cause" why its conduct has not violated Rule 11(b).  Fed. R. Civ. P.

11(c)(3).  Imposing sanctions pursuant to Rule 11 is committed to the district

court's discretion.  See Attwood v. Singletary, 105 F.3d 610, 612 (11th Cir. 1997).

Before sanctions are imposed, however, due process requires notice and an

opportunity to respond.  Id. at 613; see also Fed. R. Civ. P. 11(c).

       Plaintiffs assert a claim for theft by conversion in Count VI and theft by

deception in Count VII.  As noted above, these are criminal statutes that do not

confer a civil cause of action in Georgia.  Plaintiffs also brought a claim for

violation of the Federal Trade Commission Act (Count XVII), even though it is

well-settled that there is no private right of action under that statute.  See Jeter v.

Credit Bureau, Inc., 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) ("Most importantly,

consumers were given a private right of action to enforce the provisions of the

FDCPA against debt collectors, 15 U.S.C.A. § 1692k, a right which does not exist

under the FTC Act."); Valet Apartment Servs., Inc. v. Atlanta Journal and

Constitution, 865 F.Supp. 828, 833 (N.D. Ga. 1994). Count XVII was later

voluntarily withdrawn by Plaintiffs in response to Wells Fargo's motion to dismiss.

Plaintiffs also withdrew their claim for breach of fiduciary duty (Count XI). Under

Georgia law, there is no fiduciary relationship between a bank and its customers.

Gilliard v. Fulton Fed. Sav. & Loan Ass'n, 356 S.E.2d 734, 735 (Ga. Ct. App.

1987); Big Bend Agri-Svcs. v. Bank of Meigs, 330 S.E.2d 422 (Ga. Ct. App.

1985).

The above deficiencies in the Amended Complaint should have been readily

apparent to any attorney conducting basic legal and factual due diligence before

filing a complaint. The Court therefore orders Plaintiffs' counsel to show cause

why he should not be sanctioned for filing claims in the Amended Complaint that

do not have a basis in law and were required to be dismissed. In complying with

this Order, Plaintiffs must describe the actions, research, and investigation taken

before filing the Amended Complaint, including the basis for Plaintiffs' and their

counsel's decision to assert Counts VI, VII, XI, and XVII.

## V.     CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Wells Fargo, N.A.'s Motion to Dismiss

[15] is **GRANTED** in part and **DENIED** in part. It is **DENIED** with respect to

Counts I and III of the Amended Complaint. It is **GRANTED** as to the remaining counts.

      **IT IS FURTHER ORDERED** that Plaintiffs Rajani T. Deotare, and Chandani V. Patel's Motion to File Excess Pages [19] is **GRANTED**.

      **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Wells Fargo's Reply Brief [22] is **GRANTED** in part.

      **IT IS FURTHER ORDERED** that Plaintiffs should show cause before April 20, 2018, why they should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure.


      **SO ORDERED** this 26th day of March, 2018.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE